IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2019

## IN RE: KOLTON C.

**Appeal from the Chancery Court for Bradley County**
**No. 2018-CV-227    Jerri Bryant, Chancellor**

_____

### No. E2019-00736-COA-R3-PT
_____

This is a termination of parental rights case. Mother/Appellant appeals the trial court's termination of her parental rights to the minor child on the grounds of: (1) severe child abuse, Tenn. Code Ann. § 36-1-113(g)(4); and (2) abandonment by willful failure to visit and to support, Tenn. Code Ann. §§ 36-1-113(g)(1), § 36-1-102(1)(A)(i).  Mother also appeals the trial court's determination that termination of her parental rights is in the child's best interest. Because Appellee did not meet her burden to show that Mother failed to support the child, we reverse the trial court's termination of parental rights as to this ground.  We affirm the trial court's termination of Mother's parental rights on the grounds of severe child abuse and failure to visit, and on its finding that termination of Appellant's parental rights is in the child's best interest.

**Tenn. P. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and W. NEAL MCBRAYER, JJ., joined.

Bradley N. Wilson, Cleveland, Tennessee, for the appellant, Cassandra C.[1]

H. Franklin Chancey, and Rachel Fisher, Cleveland, Tennessee, for the appellee, Erin S.

### OPINION

### I. Background

Kolton C. ("Child") was born in February 2018 to Cassandra C. ("Appellant," or

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

"Mother") and Brandon S. ("Father").[2] Mother and Father were never married. The Child was born addicted to heroin, which Mother admitted to using during the pregnancy and up to two days before delivery. Erin S. ("Appellee") is a nurse at the hospital where Mother gave birth to the Child. After learning from a co-worker that Mother had expressed an interest in adoption, Erin S. met with Mother to discuss that option. With Mother's approval on February 22, 2018, Erin S. filed a petition, in the Polk County Juvenile Court seeking temporary custody of the Child. The juvenile court granted the petition, and the Child has remained with Erin S. since March 2018.

On March 6, 2018, Mother voluntarily entered into a thirteen-month rehabilitation program with Teen Challenge located in Knoxville, Tennessee. According to the record, the facility allows limited calls and visits for patients. In order to receive visitors, patients must list approved visitors on a correspondence authorization form. Although Mother was aware of this requirement, it is undisputed that she did not list Erin S. or the Child on her form.

On March 28, 2018, the juvenile court held a dependency and neglect hearing. Despite notice, Mother neither appeared nor filed any responsive pleading. By order of April 28, 2018, the juvenile court found the Child to be dependent and neglected because the Child was born drug-exposed and neither parent was able to support or care for him. The juvenile court continued temporary custody with Erin S. and gave her sole discretion concerning visitation.

On July 12, 2018, Erin S. filed in the Bradley County Chancery Court ("trial court"), a petition for adoption and to terminate Mother's parental rights. As grounds for termination of Mother's parental rights, Appellee averred that Mother: (1) committed severe child abuse by using drugs while the Child was *in utero*; (2) abandoned the Child by failing to visit; and (3) abandoned the Child by failing to provide support. Appellee also averred that termination of Mother's parental rights was in the Child's best interest. On her pauper's oath, the trial court appointed an attorney to represent Mother and appointed a guardian ad litem for the Child. Mother filed an answer to the petition, wherein she denied all grounds and contested that termination of her parental rights was in the Child's best interest.

The trial court heard the petition for termination of parental rights on February 4 and February 14, 2019. By order of March 25, 2019, the trial court terminated Mother's parental rights on all grounds averred in Appellee's petition and on its finding that termination of Mother's parental rights is in the Child's best interest. Mother appeals.

---

[2] Father surrendered his parental rights on January 29, 2019. He is not a party to this appeal.

- 2 -

## II. Issues

There are two dispositive issues, which we state as follows:

1. Whether there is clear and convincing evidence to support any of the grounds the trial court relied on in terminating Mother's parental rights?

2. If so, whether there is clear and convincing evidence to support the trial court's determination that termination of Mother's parental rights is in the Child's best interest?

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). On appeal, we review the trial court's findings of fact "*de novo* on the record, with a presumption of correctness of the findings, unless the

preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). We must then make our "own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

## IV. Grounds for Termination of Parental Rights

Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review all of the foregoing grounds.

## A. Severe Child Abuse

The trial court found, by clear and convincing evidence, that Mother's parental rights should be terminated on the ground of severe child abuse. Tenn. Code Ann. § 36-1-113(g)(4). Tennessee Code Annotated section 36-1-113(g)(4) provides that a ground for terminating parental rights exists if:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

Tenn. Code Ann. § 36-1-113(g)(4). Tennessee Code Annotated section 37-1-102 defines "severe child abuse," in relevant part, as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death[.]" Tenn. Code Ann. § 37-1-102(b)(22)(A)(i).

In its order terminating Appellant's parental rights, the trial court made the following relevant findings concerning severe child abuse:

> Respondent, CASSANDRA [C.], admitted that she used illegal drugs while pregnant. . . . Respondent, CASSANDRA [C.], admitted to medical care professionals that she used illegal drugs specifically heroin, two (2) days before the birth of the minor child. . . . The deposition of the minor child's pediatrician establishes that the minor child tested positive for drugs at birth and was diagnosed with Neonatal Abstinence Syndrome resulting in his transfer to NICU. . . . The minor child remained hospitalized for about

three (3) weeks and, after his discharge on March 2, 2018, Petitioner, ERIN [S.], helped him with his continuing withdrawal which lasted for over two (2) months.

It is undisputed that Mother used illegal drugs throughout her pregnancy and up to two days before the Child was born. According to the testimony of his pediatrician, the Child required treatment for Neonatal Abstinence Syndrome. The Child was kept in the Newborn Intensive Care Unit ("NICU") for three weeks after his birth. Furthermore, the Child's pediatrician testified that "when we follow children who have had significant drug exposure *in utero*, as this child has, we anticipate developmental delays and emotional delays that can be longstanding."

In her brief, Mother concedes that "Custodian [Erin S.,] satisfied the burden of proof as to severe child abuse under case law." Nonetheless, Mother maintains that "current case law interpreting the definition of severe abuse to include *in utero* drug use contravenes a public policy of fostering and promoting addiction treatment rather than allowing such problems to linger untreated in the shadows." This Court has very recently addressed this argument. In ***In re Colton***, No. M2018-01053-COA-R3-PT, 2018 WL 5415921 (Tenn. Ct. App. Oct. 29, 2018), we explained that

> [f]or over a decade, this Court has held that prenatal drug use constitutes severe child abuse for purposes of terminating parental rights. ***See In Matter of M.J.J.***, No. M2004-02759-COA-R3-PT, 2005 WL 873305, at *8 (Tenn. Ct. App. Apr. 14, 2005). In ***In re Benjamin M.***, 310 S.W.3d 844, 846-51 (Tenn. Ct. App. 2009), we discussed the issue in great detail in light of a parent's argument that a "child" within the meaning of the statute "does not include a fetus." ***Id.*** at 847. We agreed with DCS that this argument "misses the point because the fetus did not stay a fetus but became a child that sustained injury at the hand of the Mother." ***Id.*** As a result, we concluded that a parent may be held responsible for prenatal conduct that exposes a child, once born, to great bodily harm. ***Id.*** We also considered the mother's arguments regarding whether a fetus is a child or a person within the meaning of criminal law and wrongful death actions but found that neither argument was helpful in a parental termination case. ***Id.*** at 849-50. We ultimately concluded that "the statutory language defining severe child abuse clearly reflects an intent that actions before a child is born can constitute abuse to a child that is born injured by those actions." ***Id.*** at 850. Consequently, "[w]hen a child is born alive but injured, the pre-birth timing of the actions is not dispositive." ***Id.*** at 850-51.

In numerous cases since ***Benjamin M.***, this Court has repeatedly confirmed that severe child abuse can be based on a mother's prenatal drug

use. *See, e.g., In re P.T.F.*, No. E2016-01077-COA-R3-PT, 2017 WL 2536847, at \*5 (Tenn. Ct. App. June 12, 2017) ("This Court has consistently upheld termination of a mother's parental rights on the ground of severe child abuse when she has used drugs during pregnancy."); *In re Garvin M.*, 2014 WL 1887334, at \*5 ("there are numerous cases holding that a mother's use of drugs while pregnant can constitute severe child abuse"); *In re Shannon P.*, No. E2012-00445-COA-R3-PT, 2013 WL 3777174, at \*5 (Tenn. Ct. App. July 16, 2013) *perm. app. denied* (Tenn. Oct. 16, 2013) ("there is substantial case law supporting a finding of severe child abuse for a parent exposing a child to drugs *in utero*"); *In re Ethin E.S.*, No. E2011-02478-COA-R3-PT, 2012 WL 1948817, at \*8 (Tenn. Ct. App. May 31, 2012) ("this Court has repeatedly held that a mother's prenatal drug use can constitute severe child abuse in termination of parental rights cases"); *In re Joshua E.R.*, No. W2011-02127-COA-R3-PT, 2012 WL 1691620, at \*3 (Tenn. Ct. App. May 15, 2012) ("In light of our prior holdings, and the supreme court and General Assembly's disinclination to overrule them, we continue to hold that prenatal drug abuse may constitute severe child abuse for the purpose of terminating parental rights."); *In re B.A.C.*, 317 S.W.3d 718, 725 (Tenn. Ct. App. 2009) ("we are content to rely on the reasoning set forth in . . . *In re Benjamin M.* . . . thoroughly addressing the question of whether prenatal drug use may constitute severe child abuse"). This long line of cases "demonstrate[s] the uniform view of this Court that prenatal drug use does, in fact, constitute severe child abuse." *In re P.T.F.*, 2017 WL 2536847, at \*4. "A child has the right 'to begin life free from the impairment of drug addiction and other ill effects of prenatal drug abuse.'" *Id.* at \*5 (quoting *In re Benjamin M.*, 310 S.W.3d at 849).

*In re Colton*, 2018 WL 5415921, at \*7-8 (footnote omitted). We decline to deviate from these holdings. Turning to the record, there is undisputed evidence that Mother used illegal drugs up to two days before the Child was born. The Child's exposure to these illicit drugs required treatment in the NICU for three weeks. Thereafter, the Child continued to experience withdrawal symptoms for an additional two months. According to his pediatrician, the Child may experience emotional and developmental delays such that the full extent of his injuries from drug exposure may not be known for years. There is no dispute that Mother knowingly exposed this Child to drugs, which exposure has and is likely to continue to cause him injury. From the record, there is clear and convincing evidence to support the trial court's termination of Mother's parental right on the ground of severe child abuse.

### B. Abandonment

The trial court also terminated Mother's parental rights on the ground of

abandonment by failure to visit and failure to support. We begin with the ground of abandonment generally. In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred . . .

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(i). Prior to 2018, the statutory definition of abandonment placed the burden of proof on the petitioner to show that the parent's failure to visit or failure to support was "willful."

In 2018, the General Assembly amended the statute to shift the burden of proof to the parent or guardian to show that his or her failure to support or visit was not willful. For cases filed on or after July 1, 2018, Tennessee Code Annotated section 36-1-102(1)(I) now provides that

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the

Tennessee Rules of Civil Procedure

Tenn. Code Ann. § 36-1-102(1)(I). Here, Appellee filed her petition on July 12, 2018; accordingly, Mother has the burden to show that her failure to visit and failure to support the Child was not willful. As stated in the final order, the trial court applied the correct standard in this case, to-wit:

> The Court finds based on the record that there is sufficient evidence to warrant a determination that Respondent, CASSANDRA [C.], abandoned the minor child by failing to support and engaging in only token visitation. Respondent, CASSANDRA [C.], must provide by preponderance of the evidence, that her failure to visit and support the minor child was not willful.

Concerning the concept of willfulness in the context of abandonment for purposes of termination of parental rights, this Court has stated:

> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . .
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. Aug. 25, 2005) (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment . . . is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. Ct. App. 2013) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). As previously discussed, this Court reviews questions of law *de novo* with no presumption of correctness. *Id.* With the foregoing in mind, we turn to address the specific findings on abandonment.

**1. Abandonment by Failure to Visit**

The trial court found sufficient evidence that Mother's parental rights should be terminated on the ground of abandonment by failure to visit. Tenn. Code Ann. § 36-1-102(1)(A)(i). This court has emphasized that "visitation is not a rote statutory requirement; it is necessary to maintain the thread of the parent-child relationship[.]" *In re Joshua S.*, No. E2010-01331-COA-R3-PT, 2011 WL 2464720, at \*16 (Tenn. Ct. App. June 16, 2011). An absence of contact between a parent and child for an extended period of time can lead to, in effect, the "death" of the relationship. *Id.* In its order terminating Appellant's parental rights, the trial court made the following relevant findings concerning this ground:

> Hospital records introduced by Petitioner, ERIN [S.], show that Respondent, CASSANDRA [C.], did not seek to visit the minor child during his hospitalization from being born-drug exposed. . . . Respondent, CASSANDRA [C.] sought one visit with the minor child on March 5, 2018. Petitioner, ERIN [S.] testified that Respondent, CASSANDRA [C.] knew where she worked and Theresa [C.], the maternal grandmother, had her telephone number. Respondent, CASSANDRA [C.], did not make phone calls to Petitioner, ERIN [S.], to ask about the minor child. Respondent, CASSANDRA [C.], did not place Petitioner, ERIN [S.], on her visitation list with TEEN CHALLENGE. Respondent, CASSANDRA [C.] has not attempted to visit the child since. Jessie [S.] and Kendall [I.], witnesses for Petitioner, ERIN [S.] testified that Respondent, CASSANDRA [C.], did not acknowledge or seek visitation with the minor child on June 13, 2018 during court proceedings in the Juvenile Court of Polk County, Tennessee when the minor child attended court with Petitioner, ERIN [S.]. Respondent, CASSANDRA [C.], only sought visitation after the adoption petition was filed. []

Turning to the record, the petition to terminate Appellant's parental rights was filed on July 12, 2018; therefore, the relevant four-month time period is from March 12, 2018 until July 11, 2018. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at \*6 (Tenn. Ct. App. Feb. 20, 2014) (concluding that the day before the petition is filed is the last day in the relevant four-month period). Mother does not dispute that she failed to visit the Child during the relevant time period. Instead, she contends that Erin S. prevented the Child from visiting Mother in the rehabilitation facility. Thus, Mother argues that her failure to visit was not willful.

The Supreme Court has held that "a parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *In re A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *Swanson*, 2 S.W.3d 180, 189 (Tenn. Oct. 4, 1999)). However, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or

interference with the parent's attempts to visit the child." ***In re M.L.P.***, 281 S.W.3d 387, 393 (Tenn. 2009) (citation omitted).

The juvenile court's order transferring custody to Erin S. permitted visitation at the sole discretion of Erin S. The record shows that, in March 2018, Mother voluntarily entered into a thirteen-month rehabilitation program. At that time, Mother knew that the Child was in Erin S.'s custody and, in fact, Mother had consented to this placement. Furthermore, the record shows that the Child's maternal grandmother had Erin S.'s contact information — a fact that Mother knew. Nonetheless, the record shows that Mother did not attempt to contact Erin S. during the relevant four-month period. As noted above, Teen Challenge only allowed calls and visits according to the patient's correspondence authorization form. Despite the fact that Mother knew about this requirement, she failed to include Erin S. and/or the Child on her form. Furthermore, Mother knew the Child was born addicted to drugs, yet there is no evidence that Mother reached out to Erin S. or to anyone else to inquire about the Child's well-being. Under the trial court's order, it was Mother's initial burden to pursue visitation. Then, it was left to Erin S. to approve and facilitate visitation. There is nothing in the juvenile court's order mandating that Erin S. was unilaterally responsible for visitation between the Mother and the Child. Here, Mother failed to instigate visitation, which she could have done by putting Erin S.'s name on the correspondence authorization form or by reaching out to Erin S. Having failed to make any such effort, Mother's contention that Erin S. somehow thwarted visitation is disingenuous. Therefore, we conclude that there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of abandonment by failure to visit.

### 2. Abandonment by Failure to Support

A parent fails to support his or her child when, for the relevant four-month period, the parent fails to provide monetary support or fails to provide more than "token payments" toward the support of the child. Tenn. Code Ann. § 36-1-102(1)(D) (defining "failed to support" and "failed to make reasonable payments toward such child's support"). "Token support" is support that, considering the individual circumstances of the case, is "insignificant given the parent's means." ***Id.*** at (1)(B). "Terminating parental rights based on failure to support presupposes: (1) that the parent is aware of his or her duty to support; (2) that the parent is able to provide financial support, either through income from private employment or qualification for government benefits; and (3) that the parent has voluntarily and intentionally chosen not to provide financial support without a justifiable excuse." ***In re M.J.B.***, 140 S.W.3d 643, 645 (Tenn. Ct. App. Apr. 8, 2004) (citation omitted).

As discussed above, Mother carries the burden of proof by a preponderance of the evidence to show that her failure to support was not willful. *See* Tenn. Code Ann. § 36-1-102(1)(I). This Court has held that failure to pay support is "willful" if the parent "is

aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. Jan. 23, 2004), *perm. app. denied* (Tenn. May 10, 2004) (quoting *In Re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). A parent will not be found to have abandoned his or her child if the failure to support the child was not within his or her control. *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)).

In its order terminating Mother's parental rights, the trial court found:

> Respondent, CASSANDRA [C.], did not provide support for the minor child. Respondent, CASSANDRA [C.], testified that she could not provide financial support for the child because she needed money to enter the rehabilitation program with TEEN CHALLENGE. The TEEN CHALLENGE documents show that as of March 6, 2018, Respondent, CASSANDRA [C.], did not pay any money down to TEEN CHALLENGE and as of the date of those records she paid $500 towards the $1000 she was supposed to pay to enter the program.

Turning to the record, it is undisputed that Mother failed to pay any support for the Child during the relevant four-month time period. However, it is also undisputed that, during this time period, Mother was voluntarily admitted to an inpatient rehabilitation program. Mother testified that she was not allowed to work outside of the facility, and she received no compensation during the relevant four-month time period. Appellee argues that Mother voluntarily chose Teen Challenge when there were other programs that would have allowed Mother to work. Appellee also notes that Mother owned a car, which she was not using during her rehabilitation program. Appellee opines that Mother could have sold the vehicle to provide support for the Child. Appellee, however, offered no evidence to show the value of the vehicle or that the title was actually held by Mother. In addition, there is no evidence concerning Mother's income, expenses, or employment history during the relevant time period.

Because Mother's rehabilitation was voluntary, we concede that she had some choice in the program she attended. However, Mother should not be punished for seeking help with her drug addiction. Although Mother chose a program that required her to pay, the evidence shows that, as of the date of the hearing on the petition to termination her parental rights, Mother had not paid the full balance owed to the program. This fact tends to indicate that Mother had very limited financial means during the relevant time period. There can be no doubt that the necessity of treatment for her drug addiction was more imperative than gainful employment during the relevant time period. Accordingly, although there is no dispute that Mother failed to provide support for the Child, we conclude that Mother met her burden to show that her failure to do so was not

willful. Therefore, we reverse the trial court's termination of Mother's parental rights on the ground of abandonment by failure to support.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). As the Tennessee Supreme Court recently explained:

> Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." ***In re Kaliyah S.***, 455 S.W.3d at 555 (citing ***In re Audrey S.***, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." ***Id.*** When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." ***In re Audrey S.***, 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. ***Id.*** "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d)(2017).

***In re Gabriella D.***, 531 S.W.3d 662, 681-82 (Tenn. 2017).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to this appeal, these factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> ***
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child. . . .

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. Aug. 11, 2005), *perm. app. denied* (Tenn. Nov. 21, 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*Moody*, 171 S.W.3d at 194.

Concerning the Child's best interest, the trial court found:

Respondent, CASSANDRA [C.], does not have a home, a job, [and] faces criminal charges. . . . Respondent, CASSANDRA [C.], has mental health issues which are currently not being treated. Respondent,

- 13 -

CASSANDRA [C.], put forth no evidence of being drug free other than her own testimony. Respondent, CASSANDRA [C.], did not provide the Court with clean drug screens or the success rate of the TEEN CHALLENGE program. Respondent, CASSANDRA [C.], presented no evidence that she has made a lasting adjustment or any indication that her current progress would continue. Respondent, CASSANDRA [C.], does not have a specific plan to maintain her adjustment of circumstances.

Respondent, CASSANDRA [C.], does not have a meaningful relationship with the minor child. Respondent, CASSANDRA [C.], visited the minor child on March 5, 2018 before entering the rehabilitation program with TEEN CHALLENGE. Respondent, CASSANDRA [C.], did not call the child nor place the child or Petitioner, ERIN [S.], on her visitor list with TEEN CHALLENGE. Respondent, CASSANDRA [C.], did not seek to visit the minor child on June 13, 2018 when he attended court proceedings with Petitioner, ERIN [S.]. Respondent, CASSANDRA [C.], engaged in token visitation with the minor child.

Jessie [S.], the sister of Petitioner, ERIN [S.], testified that the minor child seemed to be emotionally healthy with Petitioner, ERIN [S.]. Kendyll [I.], the babysitter for the minor child, testified that there was a bond between Petitioner, ERIN [S.], and the minor child. The Court accepts the testimony of Andrea [C.], as a disinterested third party that the child is happy and in a suitable home for placement. The Court cannot overlook the fact that Petitioner, ERIN [S.], is medically-trained, and the minor child suffered medical issues that have had to be addressed by someone with the heightened qualifications of the Petitioner, ERIN [S.].

Respondent, CASSANDRA [C.], showed abuse toward the minor child. . . . Respondent, CASSANDRA [C.], used illegal drugs knowingly while pregnant with the minor child is in complete disregard to the effect of heroin on this child.

Respondent, CASSANDRA [C.], is homeless. Respondent, CASSANDRA [C.]'s plan is to bring the child to the home of the maternal grandparents. The Court can only draw an inference that the maternal grandparents' home is safe and does not have criminal activity. . . . Respondent, CASSANDRA [C.], if not using illegal drugs in the maternal grandparents' home, was using illegal drugs while residing in the maternal grandparents' home. The testimony of the

maternal grandparents is that their daughter would stay gone a few days and come back. The home of Petitioner, ERIN [S.], is a healthy, stable and safe home.

The medical records introduced as Exhibit 2-3 indicate that Respondent, CASSANDRA [C.]'s diagnosis of bipolar disorder and anxiety. The medical records do not show any treatment for these disorders. Respondent, CASSANDRA [C.], suffers from mental issues which are not being addressed. [] The Court finds that it would be detrimental to the child and could keep Respondent, CASSANDRA [C.], from providing a safe, stable home for the child.

Respondent, CASSANDRA [C.], testified that she could not provide financial support for the child because she needed money to enter the rehabilitation program with TEEN CHALLENGE. The TEEN CHALLENGE documents show that as of March 6, 2018, Respondent, CASSANDRA [C.], did not pay any money down to TEEN CHALLENGE and as of the date of those records she paid $500 towards the $1000 she was supposed to pay to enter the program. []

***

The minor child deserves more than a chance that Respondent, CASSANDRA [C.], will maintain sobriety. The child at this time is in a home that is stable with a parent, who because of her medical training, is able to assist him with development. Petitioner, ERIN [S.], provided a home study and a background report to the Court. The home study shows Petitioner, ERIN [S.]'s home is safe, without criminal activity. Petitioner took care of the child going through withdrawals, took care of a child during his hospitalization for drug exposure *in utero* . . . and tried to keep the maternal grandparents in a relationship with the child[.] Petitioner, ERIN [S.], testified that she spent over $9,000 to purchase items for the child and set up housekeeping for the minor child. [] There is no proof in the record that Petitioner, ERIN [S.], is anything but a good parent and has taken care of this child since a time close to his birth. It is in the best interest of the child for Respondent, CASSANDRA [C.]'s, rights to be terminated.

The foregoing findings are supported by the evidence. As discussed above, the Child has lived solely with Erin S. since he was discharged from the hospital, and he has not had consistent, quality time with Mother since his birth. The Child has bonded with Erin S. and is currently in a safe, nurturing home. Conversely, at the time of the hearing, Mother had not completed her inpatient rehabilitation program, and there was no proof

concerning her ability to maintain sobriety. Furthermore, Mother's mental health issues remain untreated at the time of the hearing. Mother testified that she cannot afford a house or apartment and intends to return to her parents' home. Meanwhile, the Child has bonded with Erin S. and has thrived while in her care. The Child's needs have been fully satisfied during the time he has lived with Appellee. To remove him from her home would likely cause the Child significant emotional and/or physical harm. This is especially true given the lack of evidence concerning the stability of Mother's sobriety and the myriad problems in her life that remain unaddressed. From the record, we conclude that there is clear and convincing evidence to support the trial court's conclusion that termination of Mother's parental rights is in the Child's best interest.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Mother's parental rights on the ground of abandonment by failure to support. We affirm the termination of Mother's parental rights on the remaining grounds and on the trial court's finding that termination of Mother's parental rights is in the Child's best interest. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to Appellant, Cassandra C. Because Cassandra C. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE